**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Gerard M. Dunne,<br>Ronald S. Murphy,<br>Dion L. Walker,<br>Margaret Manning,<br>Lisa Brown,<br>Ronald Carbonneau,<br>Tommy Carmichael,<br>Adonis Coble,<br>Christopher Danzi,<br>Kenneth Eisenhutch,<br>Thomas Hall,<br>Jeffrey Houseman,<br>Grady Lofton,<br>Kyle Martin,<br>Thomas Maxwell,<br>Ryan Parish,<br>David Riestor,<br>Luis Rivera,<br>William Salisbury,<br>Chea Sharrett,<br>Leo Sperduti,<br>Nathaniel Stevenson,<br>John Stover,<br>Julie Switzer,<br>Robin Wright.<br><br>       Plaintiffs,<br><br>  vs.<br><br>E. I. Du Pont De Nemours and Co.,<br><br>       Defendant. | CASE NO.<br><br>**CIVIL ACTION COMPLAINT**<br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs, by and through their counsel, the law firm of Woodley & McGillivary

LLP and the Yezbak Law Offices, respectfully submit their complaint against E.I. DuPont de

Nemours and Company ("DuPont") on behalf of employees who worked in overtime eligible

positions at one of defendant's plants and/or other work locations in New York for Dupont's

violations of New York State law and, on behalf of each of the employees who have opted in to

this action, Dupont's violations of the Fair Labor Standards Act ("FLSA").

2.      At its New York work locations, DuPont violated the FLSA and the New York

Minimum Wage Act, New York Labor Law ("NYLL") by failing to pay its workers overtime

compensation in a timely fashion, waiting weeks or years to do so, and by failing to pay them

overtime at the rate of one and one-half times their regular rates of pay for work hours in excess

of forty (40) hours a week.  The FLSA and the NYLL are the laws that embody the most basic

labor standards in New York – that workers are entitled to receive a fair day's pay for a fair

day's work through the timely payment of overtime compensation.

3.      The regular rate of pay is the keystone to the FLSA and NYLL because it

provides the base point from which employees' overtime is calculated. Here, the class

representative plaintiffs and other employees in the class toil long hours at DuPont's New York

facilities in overtime eligible positions. In return, DuPont unlawfully deprived the representative

plaintiffs and other employees of the overtime compensation at the rate of one and one-half times

plaintiffs' regular rates of pay in violation of the FLSA and NYLL by purposefully excluding

certain payments from the plaintiffs' regular rates of pay, and in addition, by paying overtime

months, or even years, after plaintiffs had worked that overtime.

## PARTIES

4.      Plaintiffs are current or former employees of the defendant, and they bring this

action against defendant on their own behalf regarding violations of the FLSA, and as a class

action in accordance with Fed. R. Civ. P. 23 for violations of the NYLL, because of defendant's

unlawful deprivation of plaintiffs' rights to overtime compensation. Plaintiffs seek compensation, damages, equitable and other relief available under the FLSA, as amended, 29 U.S.C. §201, *et seq*, and for damages compensation, interest, and liquidated damages under the NYLL.

5.      At all times material herein, the representative plaintiffs Gerard M. Dunne, Ronald S. Murphy, Dion L. Walker, and Margaret Manning have been employed, or were employed, by the defendant DuPont, at DuPont's Yerkes Plant in Buffalo, New York. In their positions, plaintiffs were eligible for, and were in fact paid, premium payments in addition to their hourly wages. When paid premium pay in addition to their hourly wages, defendant failed to include the premium pay in their regular rates of pay for purposes of calculating and paying them overtime compensation for working in excess of forty (40) hours in a week. The plaintiffs identified in the above caption gave their written consent to be party plaintiffs in this FLSA action pursuant to 29 U.S.C. § 216(b), and are members of the Fed. R. Civ. P. 23 class. Such written consents are appended to this Complaint as Exhibit A and set forth each plaintiff's name and address.

6.      In addition, and pursuant to Fed. R. Civ. P. 23, plaintiffs bring their NYLL claims on behalf of themselves and other class members who meet the class definition. The class definition is: all current and former overtime eligible employee who worked for DuPont in New York at any time since July 17, 2011.

7.      Plaintiffs bring this action for back pay, liquidated damages and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), 28 U.S.C. § 1331, N.Y. Lab. Law. §§ 650 et. seq. and 12 N.Y.C.C.R § 142, to remedy the defendant's willful and unlawful violations of federal and state law complained of herein.

8.      Each of the plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), and within the meaning of the New York Minimum Wage Act, N.Y. Lab. Law § 651(5). In addition, plaintiffs meet the definition of the term "manual worker" as that term is defined by N.Y. Lab. L. § 190(4) (a manual worker is "a mechanic, workingman, or labourer").

9.      At all times material herein while employed by Defendant, Plaintiffs were engaged in activities in interstate commerce.

10.      Defendant DuPont's principal office and place of business is located at 974 Centre Road, Wilmington, Delaware, 19805. Defendant DuPont, at all times material hereto, meets the definition of "employer" within the meaning of 29 U.S.C. § 203(d) and "persons" within the meaning of 29 U.S.C. § 203(a). Defendant also at all times material hereto has been an "employer" within the meaning of the New York Minimum Wage Act, N.Y. Lab. Law § 651(6).

11.      DuPont has in its possession, custody, and control all of the employment records of the representative plaintiffs and the members of the class so that DuPont can identify exactly when each of the plaintiffs worked in overtime eligible positions. In addition, plaintiffs' payroll records are in defendant's possession and these records reflect the plaintiffs' hours of work and the amounts paid to them.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and 28 U.S.C. §1367(a) (supplemental jurisdiction).

13.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

14.     Since July 17, 2011, as well as before, the representative plaintiffs have worked in overtime eligible positions at DuPont's Plant in Buffalo, New York.

15.     At all times material herein, the representative plaintiffs have been employed by defendant DuPont.

16.     At all times material herein, representative plaintiffs have worked in production worker jobs, which are overtime eligible positions, at DuPont's Buffalo, New York plant, where the company makes Corian, a material used in residential construction for countertops, and Tedlar, a film that is used in constructing airplanes.

17.     Plaintiffs working at the Buffalo Plant work one of two shifts: a swing shift or a rotating shift. For example, Plaintiff Gerard Dunne has worked primarily on the "swing shift" from July 17, 2011 to the present. Plaintiff Dion Walker worked primarily on the "rotating shift" from July 17, 2011 to the present. All plaintiffs have worked shifts for which, in addition to their other pay, the employees receive premium payments during some or all of the time period from July 17, 2011, to the present.

18.     When plaintiffs and other overtime eligible employees work "swing shifts," they rotate between two twelve-hour long shifts to ensure continuous 24-hour coverage. The two twelve-hour shifts are from 7:00 am to 7:00 pm, and from 7:00 pm to 7:00 am. The plaintiffs and other overtime eligible employees on this schedule work four 12-hour days from 7:00 am to 7:00 pm, followed by four days off, followed by four 12-hour days from 7:00 pm to 7:00 am, followed by four days off. This rotation causes plaintiffs to work 48 hours in a work week at least one week per month. Plaintiffs regularly work unscheduled overtime shifts, which they

work several times per month that causes them to work in excess of 40 hours a week. All swing

shifts are staffed with overtime eligible employees.

19.    When plaintiffs and other overtime eligible employees work "rotating shifts" they

work Monday through Friday, on assigned 8 hour shifts. During their regularly assigned shifts,

plaintiffs and other overtime eligible employees assigned to rotating shifts work from 3:00 p.m.

to 11:00 p.m. in the first week, 7 a.m. to 3 p.m. in the second week, and 11 p.m. to 7 a.m. in the

third week, and then the cycle repeats.  In addition, they work full or partial overtime shifts on

Saturday and Sunday several times per month, and are often held over after the end of the

scheduled eight hour shift several times per month. As such, plaintiffs and other overtime

eligible employee regularly work more than 40 hours in a week.

20.    Both the swing and rotating shifts are designed to ensure that plaintiffs and other

overtime eligible workers provide 24-hour coverage at Dupont's New York facilities 365 days a

year.

21.    In addition to their regularly scheduled hours, plaintiffs, and other overtime

eligible employees who work for DuPont in New York, routinely work additional overtime

shifts, and thus regularly and routinely work more than 40 hours in a 7-day period.

22.    Prior to April 1, 2016, among other things, DuPont utilized a payroll system or

service called MyInfo. During this time, DuPont failed to properly calculate the rate at which

overtime was paid by failing to include premium payments made to plaintiffs and other overtime

eligible employees in the rate at which they were paid overtime. When calculating the regular

rate at which overtime was paid to plaintiffs and other overtime eligible employees, defendant

excluded certain premium payments made to them.  For example, shift premiums, meal

allowance payments, and production bonuses received by plaintiffs were not included in

plaintiffs' regular rates of pay for purposes of determining their overtime compensation.

23.     As such, during the weeks that the plaintiffs worked more than 40 hours, DuPont

violated the FLSA and NYLL by failing to pay plaintiffs for overtime work performed over the

40-hour threshold at the correct regular rate of pay.

24.     Furthermore, defendant often did not pay any overtime to plaintiffs until weeks or

even years had passed after the overtime had been worked.

25.     The plaintiffs, and all other overtime eligible employees who worked at one of

defendant DuPont's facilities in New York, worked significant amounts of overtime on a weekly

basis, but defendant DuPont failed to provide the overtime pay to which they are entitled under

the law, and failed to pay overtime in a timely manner.

*Failure to Include Premium Payments in the Regular Rate*

26.     Plaintiffs and all other overtime eligible employees at DuPont's New York plants

receive premium payments in addition to their hourly wages.

27.     Plaintiffs and all other overtime eligible employees at DuPont's New York plants

receive shift premiums payments, depending on their assignments. Prior to April 1, 2016, and

continuing thereafter, these premiums were not included in the regular rate of pay at which

overtime was paid to plaintiffs and all other overtime eligible employees at DuPont's New York

plants.

28.     Plaintiffs and all other overtime eligible employees at DuPont's New York plants

also routinely earned between $8-$15 each shift as meal allowance premium payments for

working beyond their regular schedule, the amount of which depends on how many additional

hours the plaintiffs work. Prior to April 1, 2016, and continuing thereafter these meal allowance

premium payments were not included in the regular rate of pay at which overtime was paid to plaintiffs and all other overtime eligible employees at defendant DuPont's New York facilities.

29.     Plaintiffs and all other overtime eligible employees at DuPont's New York plants also earned production bonuses, which were annual payments that were distributed to employees when the workers productivity allowed DuPont to meet its production goals for the year. Prior to April 1, 2016, and continuing thereafter these production bonus premium payments were not included in the regular rate of pay at which overtime was paid to plaintiffs and all other overtime eligible employees at DuPont's New York facilities.

30.     Similar to the representative plaintiffs identified above, from July 2011, as well as before, all overtime eligible employees at DuPont's plants and other work locations in New York routinely work and worked more than 40 hours in a work-week and received the premium payments described above in addition to their hourly wages in the same week, but were denied proper compensation because defendant miscalculated the regular rate that it used to calculate employees' overtime compensation by excluding these premium payments.

31.     The precise amount of premium pay each plaintiff receives can be identified through defendant's payroll system or service providers, and through other work and pay records maintained by defendant. Thus, the amount of damages can be easily and readily determined for the plaintiffs and other class members that result from defendant's failure to include these payments in the regular rate of pay at which overtime is paid.

### *Late Payment of Overtime Worked*

32.     When plaintiffs and other overtime eligible employees at DuPont's New York work locations earned overtime payments, defendant delayed the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours.  The delay in

payment takes place because defendant failed to include the premium payment in its calculation of the plaintiffs' regular rates of pay for purposes of paying overtime for hours worked in excess of 40 hours a week. Then, months or years later, defendant paid some (but not all) of this unpaid overtime compensation.

33.     For example, during the 2016 calendar year, after April 2016, defendant made some overtime payments for pre-April 2016 overtime work that had been performed months and years earlier. Apparently, defendant made these payments in an attempt to make up for some failed overtime payments; however, in doing so, it failed to provide liquidated damages or interest for these late payments.

34.     Overtime eligible employees who left defendant's employ prior to April 2016 when these payments were made did not ever receive such payments and, as a result, were never paid overtime in correct amounts for hours that they worked in excess of 40 hours a week. For example, representative plaintiff Margaret Manning left her employment with DuPont in June 2014, and did not receive any payment for overtime work that was paid at the incorrect regular rate of pay.

35.     Similar to the plaintiffs identified above, all employees in overtime eligible positions at DuPont's New York work locations are similarly situated and are paid for overtime hours worked more than two pay periods after the plaintiffs worked and earned the overtime compensation. Similarly, all of the plaintiffs employed after April 2016 received late payments that were allegedly made for underpayments for overtime work performed before April 2016, and such payments were made without interest and without liquidated damages and in improper amounts. The precise amount of overtime compensation that was delayed in each instance, can

be identified through MyInfo, ADP and through other work and pay records regularly maintained by defendant.

## COUNT I

### FAILURE TO PAY PLAINTIFFS
### IN COMPLIANCE WITH THE FLSA

36.     Plaintiffs hereby incorporate by reference paragraphs 1 through 35 in their entirety and restate them herein.

37.     Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions.  Defendant has failed to include premium payments that are made in addition to employees' regular pay in the regular rates of pay at which overtime pay is calculated for the plaintiffs as required under the law.

38.     Defendant's failure to include premium payments in plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b) (non-overtime premiums must be included in the regular rate at which overtime is paid).  The failure to include these premium payments in plaintiffs' regular rates means that when plaintiffs are paid for overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA.

39.     Further, the FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the Act may not be delayed except as reasonably necessary to compute the amount owed and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29

C.F.R. § 778.106.  Defendant has violated these basic principles by delaying plaintiffs' overtime payments weeks, months, and in some cases years after the overtime was worked.

40.     Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

41.     As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined.  The employment and work and pay records for the plaintiffs are in the exclusive possession, custody and control of defendant, or defendant's agents, and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a).  Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

42.     Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

43.     Pursuant to 29 U.S.C. § 255(a), defendant's violation is willful, thus extending the FLSA recovery period back to July 17, 2014.

44.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### PLAINTIFFS' CLASS ACTION ALLEGATIONS FOR FAILURE TO PAY OVERTIME FOR ALL HOURS WORKED IN EXCESS OF 40 HOURS PER WEEK AT THE REQUIRED REGULAR RATE IN VIOLATION OF THE NEW YORK MINIMUM WAGE ACT, N.Y. LAB. LAW §§ 650 ET. SEQ. AND 12 N.Y.C.C.R. § 142

45.      Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 44 of the

Complaint.

46.      The New York Minimum Wage Act requires the payment of overtime

compensation to employees who work in excess of the hourly standards set forth therein.  In

particular, Section 142-2.2 of the New York Minimum Wage Order for Miscellaneous Industries

and Occupations requires the payment of overtime compensation at the rate of one and one-half

times each employee's regular rate of pay in excess of 40 hours per week, in the manner and

methods provided in the Fair Labor Standards Act. 12 N.Y. Comp. Codes R. & Regs.

("N.Y.C.R.R.") § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of

[one and one-half] times the employee's regular rate in the manner and methods provided in and

subject to the exemptions of sections 7 and 13 of [the FLSA]."). Defendant failed to comply with

the overtime pay requirements of New York law in the manner outlined herein by failing to

compensate Plaintiffs at the required regular rate of pay by failing to include all remuneration for

employment paid to plaintiffs in the plaintiffs' regular rate of pay when it has paid for work

hours in excess of forty (40) hours a week.

47.      In addition, N.Y. Lab. Law § 191 (chapters 1-36, 50-59) requires that "manual

workers shall be paid weekly and not later than seven calendar days after the end of the week in

which the wages are earned." Plaintiffs, who are overtime eligible production workers, meet the

definition of the term "manual worker" as that term is defined by N.Y. Lab. Law § 190(4) (a

manual worker is "a mechanic, workingman, or laborer"). Thus, defendant's failure to pay

plaintiffs for their overtime at the required regular rate violated the prompt payment

requirements of New York law.

48.     As a result of Defendant's violations of the New York Minimum Wage Act,

overtime compensation has been unlawfully withheld by Defendant from Plaintiffs and other

members of the class of Dupont's overtime eligible employees in New York for which

Defendant is liable pursuant to N.Y. Lab. Law. § 663 and N.Y. Lab. Law § 198, an equal amount

as liquidated damages, as well as interest, reasonable attorneys' fees, and the cost of this action.

49.     The employment and work records for the plaintiffs are in the exclusive

possession, custody and control of the defendant, and Plaintiffs are unable to state at this time the

exact amount owing to them.  Defendant is under a duty imposed by the New York Minimum

Wage Act, N.Y. Lab. Law § 661 and 12 N.Y.C.C.R. § 142-2.6, as well as N.Y. Lab. Law § 195,

to maintain and preserve payroll and other employment records with respect to the plaintiffs

from which the amount of defendant's liability can be ascertained.

50.     Representative plaintiffs Gerard M. Dunne, Ronald S. Murphy, Dion L. Walker,

and Margaret Manning bring this action on behalf of themselves and members of a Rule 23 class

action.

51.     The class involves hundreds of employees, with at least 400 overtime eligible

employees working at DuPont's New York plants during the time period in question. As such,

class action is the superior method for resolution of the claims asserted herein as the class is so

numerous that joinder of all class members would be impracticable.

52.     The claims of the class representatives are typical of those claims that would be

asserted by class members and the relief sought is typical of the relief that each class member

could seek if he or she pursued the case on his or her own. The damages sought are the result of corporate-wide payroll practices that similarly affect all members of the class.

53.     The class representatives will fairly and adequately protect the interests of the class. Plaintiffs understand that as class representatives, they assume a responsibility to the class to represent its interests fairly and adequately. Plaintiffs are represented by counsel who are experienced in class actions and have previously represented thousands of plaintiffs in wage and hour cases.

54.     Common questions of law and fact predominate over any questions affecting only individual class members including:

    a.  Whether Defendant failed to compensate class members for time worked over 40 hours in a work week at the required regularly rate of pay;

    b.  Whether defendant failed to timely pay plaintiffs their wages for overtime work; and

    c.  What damages are owed to the class members.

55.     A class action is superior to the prosecution of individual actions for at least the following reasons:

    a.  A single case will resolve multiple claims which involve the same questions of law and fact;

    b.  Class treatment allows for the resolution of claims on behalf of individuals who would not otherwise have the resources to maintain litigation against a large corporation; and

    c.  Absent class treatment, employees may be reluctant to bring a claim for fear of retaliation.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law, all plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, all plaintiffs, on their own behalf and on behalf of other members of the class of overtime eligible employees, pray that this Court:

(a)  Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations under federal law, and obligations under state law, and deprived each of the plaintiffs of his/her rights;

(b)  Order a complete and accurate accounting of all the unpaid compensation to which the plaintiffs are entitled;

(c)  Award plaintiffs compensatory relief in the form of unpaid back pay compensation and liquidated damages equal to their unpaid back pay compensation;

(d)  Award plaintiffs interest on their unpaid compensation;

(e)  Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f)  Grant such other relief as may be just and proper.

Respectfully submitted,


/s/ Sarah M. Block
Sarah M. Block (SB1460)
Gregory K. McGillivary
Diana J. Nobile
William Li
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005

15

Phone:  (202) 833-8855
gkm@wmlaborlaw.com
djn@wmlaborlaw.com
wwl@wmlaborlaw.com

/s/ Charles P. Yezbak
Charles P. Yezbak
Yezbak Law Offices
2002 Richard Jones Rd. Suite B-200
Nashville, Tennessee 37215
phone: 615-250-2000
yezbak@yezbaklaw.com

*Counsel for Plaintiffs*

16