UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Gerard Dunne et al.,

                Plaintiffs,

                **Decision and Order**

        v.

                17-CV-659S

E.I. Du Pont De Nemours and Co.,

                Defendant.

## I.      INTRODUCTION

Plaintiff Gerard Dunne and nearly three dozen of his coworkers at defendant E.I. Du Pont De Nemours and Co. ("DuPont") believe that DuPont has shortchanged them on overtime wages and has taken way too long to pay overtime wages owed to them.  Plaintiffs accordingly filed suit in this District on July 17, 2017, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, as well as violations of New York law including the New York Minimum Wage Act, N.Y. Labor Law § 661 and 12 N.Y.C.C.R. §§ 142-2.2 and142-2.6, as well as N.Y. Labor Law § 195.  Plaintiffs' allegations against DuPont are not directly the focus of the Court's attention at this time.  DuPont has drawn the Court's attention to two other cases in other districts involving DuPont employees.  The DuPont employees in the other districts appear to be making similar allegations about failure to calculate overtime wages properly and failure to pay overtime wages promptly.  Because one of those cases began before this one did, and because both of the other cases are seeking certification of a national FLSA class for similar claims, DuPont has filed

non-dispositive[1] motions (Dkt. Nos. 11, 12) to transfer this case and to stay proceedings until the receiving court can assess where to go next.  Plaintiffs oppose a transfer and stay, generally on the basis that they are proceeding individually for their FLSA claim and that this case is the only one of the three that contains state-level claims.  In short, plaintiffs argue that this case is too different from the other two to qualify for transfer under a judicial doctrine known as the "first-filed rule."

The Hon. William M. Skretny has referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 15.)  The Court held oral argument on September 28, 2017.  For the reasons below, the Court denies both of DuPont's motions but without prejudice.

## II.     BACKGROUND

### A.     *This Case*

This case concerns allegations that DuPont incorrectly calculated how much overtime pay it owed to plaintiffs and that it did not pay overtime in a timely fashion.  Plaintiffs—33 total as of this writing—are current or former DuPont employees who worked at the Yerkes Plant in Buffalo, New York.  Plaintiffs' allegations center around how DuPont scheduled shifts at the Buffalo plant. To ensure 24-hour coverage at the plant, DuPont scheduled swing shifts and rotating shifts.  The complaint contains a succinct description of the two types of shifts:

> When plaintiffs and other overtime eligible employees work "swing shifts," they rotate between two twelve-hour long shifts to ensure continuous 24-hour coverage.  The two twelve-hour shifts are from 7:00 am to 7:00 pm, and from 7:00 pm to 7:00 am.  The plaintiffs and other overtime eligible employees on this schedule work four 12-hour days from 7:00 am to 7:00 pm, followed by four days off, followed by four 12-hour days from 7:00 pm to 7:00 am, followed by four days off.  This rotation causes plaintiffs to work 48 hours in a work week at least one

---

[1] Motions to transfer generally are non-dispositive.  *See, e.g., Moog, Inc. v. Newport Aeronautical, Inc.*, No. 14-CV-00504A(F), 2016 WL 3444238, at *1 n.1 (W.D.N.Y. June 23, 2016).

week per month.  Plaintiffs regularly work unscheduled overtime shifts, which they
work several times per month that causes them to work in excess of 40 hours a
week.  All swing shifts are staffed with overtime eligible employees.

When plaintiffs and other overtime eligible employees work "rotating
shifts" they work Monday through Friday, on assigned 8 hour shifts.  During their
regularly assigned shifts, plaintiffs and other overtime eligible employees assigned to
rotating shifts work from 3:00 p.m. to 11:00 p.m. in the first week, 7 a.m. to 3 p.m.
in the second week, and 11 p.m. to 7 a.m. in the third week, and then the cycle
repeats.  In addition, they work full or partial overtime shifts on Saturday and
Sunday several times per month, and are often held over after the end of the
scheduled eight hour shift several times per month.  As such, plaintiffs and other
overtime eligible employee regularly work more than 40 hours in a week.

(Dkt. No. 1 at 5–6.)  Apart from swing and rotating shifts, plaintiffs worked additional overtime

shifts as well.  (*Id.* at 6.)  DuPont used a payroll system called MyInfo to keep track of hours

worked, but two problems arose with the tracking.  First, according to plaintiffs, DuPont failed to

include shift premiums, meal allowance payments, and production bonuses in the calculation of

plaintiffs' pay.  The failure to include these other forms of remuneration led to a lower base on

which overtime calculations rested.  Second, DuPont allegedly would delay payment for accrued

overtime by months and even years.

Plaintiffs began this case by filing their summons and complaint on July 17, 2017.  (Dkt.

No. 1.)  The complaint contains two claims.  In the first claim, plaintiffs accuse DuPont of

violating the FLSA by failing to include premium payments made, in addition to employees'

regular pay, in the regular rates of pay at which overtime pay is calculated.  At this time, plaintiffs

are pursuing the FLSA claim individually.  In the second claim, plaintiffs accuse DuPont of

violating the New York Minimum Wage Act and the New York Labor Law by failing to pay the

correct overtime wage and by failing to pay overtime wages within seven calendar days after the end

of the week in which the wages are earned.  Plaintiffs have stated explicitly in the complaint that

they intend to pursue the second claim as a Rule 23 class action on behalf of "at least 400 overtime

eligible employees working at DuPont's New York plants during the time period in question."  (*Id.*

at 13.)

B.     *The Texas Case*

Plaintiffs' allegations in this case are fairly easy to understand, but a complicating factor

that prompted the pending motions is the existence of two other cases, in other districts, that

appear to have some procedural and substantive overlap.  On September 2, 2016, a DuPont

employee named Gene Chance ("Chance") filed suit against DuPont in the Eastern District of

Texas.  (*See generally* E.D. Tex. Case No. 1:16-CV-376 (the "Texas Case").)  The current operative

pleading in the Texas Case is the third amended complaint filed on May 8, 2017.  (Texas Case

Dkt. No. 31.)  In the third amended complaint, Chance described a schedule of work shifts at his

plant that resembles the swing and rotating shifts that plaintiffs have described for their plant. (*Id.*

at 3.)  Chance described the use of the MyInfo system at his plant as well and how that system

failed to calculate correct overtime wages.  The third amended complaint in the Texas Case

contains one claim against DuPont; in that claim, Chance accuses DuPont of violating the FLSA

by failing to include all remuneration in its calculation of overtime wages and by failing to use the

correct overtime formula.  (*Id.* at 11.)  Notably, and unlike the complaint in the present case,

Chance did not sue only individually.  Chance announced explicitly in the third amended

complaint that he intended to create a collective action whose class would be "*[a]ll* current and

former hourly or salaried non-exempt employees who worked for Defendant between September 2,

2013 and the present who received a scheduled overtime allowance, including both day shift and night shift." (*Id.* at 10 (emphasis added).)  Chance clarified further that the injuries sustained by the proposed class "were caused by Defendant's payroll procedure implemented and followed at *each of Defendant's 50 legacy facilities throughout the United States*, which payroll system and overtime procedure—known as the MyInfo system and Scheduled Overtime Allowance procedure—universally failed to pay all overtime wages owed by failing to calculate the 'regular rate of pay' for those nonexempt employees receiving overtime wages under the FLSA, and which violations cover a timeframe exceeding three plus years prior to the filing of this lawsuit." (*Id.* at 9 (emphasis added).)  On May 8, 2017, Chance filed an amended motion to certify his proposed class. (Texas Case Dkt. No. 32.)  DuPont opposes certification, and the parties informed this Court at oral argument that the motion for certification is scheduled for a hearing on October 11, 2017.

       C.    *The Tennessee Case*

       The second case that appears to have some overlap to this case originated in the Middle District of Tennessee.  On June 2, 2017, DuPont workers Kenneth Cook, James Botts, Shawn Hunter, Larry LaClair, Thomas Short, George Willis, James Cahoon, and Chris Paulley filed suit against DuPont in the Middle District of Tennessee.  (*See generally* M.D. Tenn. Case No. 3:17-CV-909 (the "Tennessee Case").)  The Tennessee plaintiffs worked at three DuPont plants in Tennessee, Virginia, and Kentucky.  (Tennessee Case Dkt. No. 1 at 2.)  Like plaintiffs in this case and the Texas Case, the Tennessee plaintiffs worked swing and rotating shifts that led to hours payable at overtime rates.  (*Id.* at 5–6.)  The complaint in the Tennessee Case contained a single

count accusing DuPont of violating the FLSA.  DuPont allegedly violated the FLSA by failing to include all remuneration in its calculations of overtime wages, leading the company to shortchange the Tennessee plaintiffs for overtime owed to them.  (*Id.* at 10.)  DuPont allegedly committed a further violation by failing to pay overtime in a timely fashion, delaying overtime payments in some instances by weeks, months, or even years.  (*Id.*)  As with the Texas Case, the Tennessee plaintiffs put DuPont on notice that they were suing individually but also wanted to define a national class for a collective action.  "Similar to the representative plaintiffs identified above, *all employees in Hourly Paid Positions at defendant's plants nationwide* are similarly situated and routinely work and worked more than 40 hours in a work-week and receive premium payments in addition to their hourly wages, but were denied proper compensation because defendant miscalculated the regular rate with which it used to calculate employees' overtime compensation."  (*Id.* at 8 (emphasis added).)  The Tennessee plaintiffs' attorneys also represent plaintiffs in this case.

On June 9, 2017, the Tennessee plaintiffs moved to certify a class for a collective action. (Tennessee Case Dkt. No. 8.)  On June 15, 2017, DuPont filed motions to stay the Tennessee Case and to transfer it to the Eastern District of Texas.  (Tennessee Case Dkt. Nos. 27, 28.)  On August 3, 2017, the court in the Tennessee Case granted the motion to transfer, denied the motion to stay as moot, and deferred ruling on the motion for certification.  (Tennessee Case Dkt. No. 50.)  In short, the court in the Tennessee Case decided that the Texas Case and Tennessee Case each sought national classes of DuPont employees that would substantially overlap.  The court found further that the issues in each case concerning overtime calculation and timeliness are substantially similar.  The Court consequently granted transfer under the first-filed rule.

6

D.     *The Pending Motions in This Case*

As of this writing, plaintiffs have not filed any motion to certify a class for their individual

FLSA claim or for their proposed class-wide state claim.  Nonetheless, and probably in anticipation

of a certification motion, DuPont filed the pending motions to stay and to transfer on July 31,

2017.  Central to DuPont's motions is its request for invocation of the first-filed rule.  DuPont

argues that plaintiffs here are a subset of the national classes of DuPont employees described in the

Texas Case and Tennessee Case; with the defendant in all three cases obviously the same, the

parties thus would substantially overlap.  DuPont argues further that the issues in this case and the

Texas Case (as well as the Tennessee Case) substantially overlap.  Essentially, according to DuPont,

all three cases involve allegations that the MyInfo payroll system did not account for all

remuneration when calculating overtime and thus shortchanged DuPont employees on overtime

wages.  The case here is the only one of the three that contains a state-level class action, but

DuPont argues that the substance of the state claim is sufficiently similar that the Eastern District

of Texas can adjudicate it using the same analysis that it will use for the FLSA claims in all three

cases.  DuPont asserts that no equitable considerations warrant keeping this case in this District in

the face of the similarities to the Texas Case and the Tennessee Case.  If the Court transfers this

case to the Eastern District of Texas then, in DuPont's view, a stay of the case would make sense

because it would allow the court in Texas to make a consistent decision about certification across

all three cases.  Amidst the thorough arguments and research set forth in its briefing, DuPont

included the following candid statement in a footnote:

> If Plaintiffs had filed this action individually, did not seek to represent a
> NYLL class and affirmatively expressed their intent not to opt into the Chance,

> Cook or any other collective action alleging the same claims, this Motion would be baseless and DuPont could not file it.  DuPont has no opposition to the [then-]25 Named Plaintiffs pursuing their individual FLSA claims in this Court, which is why DuPont is not seeking dismissal of Plaintiffs' case.  If Plaintiffs were not proceeding on behalf of a New York class, they would not be proceeding with a competing class claim seeking the same relief as the Chance case with the only difference being a longer statute of limitations under New York law.  In such a case, any decisions in the Chance case would not bind Plaintiffs as individuals in any way.  There is no dispute that the Plaintiffs are entitled to proceed individually in this Court to pursue their FLSA claims rather than be compelled to opt into a collective action filed in another jurisdiction.  However, Plaintiffs' decision to file this claim as a putative class action alleging the same substantive claims as in Chance renders the first-filed rule applicable for the reasons discussed herein.

(Dkt. No. 11-2 at 4.)  The Court appreciates DuPont's candor in focusing its position and will say more about this footnote later.

Plaintiffs oppose the pending motions in all respects.  Plaintiffs are pursuing only individual FLSA claims, in contrast to the Texas Case and the Tennessee Case, and have not sought to opt into either of those cases.  This case is the only one of the three that contains a state-law claim, and plaintiffs argue that New York's rules about overtime wages differ in significant ways from the FLSA; the differences include record-keeping requirements that would warrant presumptions against employers that keep inadequate records.  Finally, plaintiffs ask the Court to account for certain equitable factors.  Among other factors, all plaintiffs in this case live in this District; all of the evidence for this case will be found within this District and within New York's borders; and plaintiffs otherwise have no connection to the Eastern District of Texas.

The Court notes two points that the parties made at oral argument.  At oral argument, the Court asked what would happen if it transferred this case to the Eastern District of Texas before that court decided on certification for the Texas Case and Tennessee Case, and FLSA certification

then was denied.  DuPont reiterated the point, first made in the footnote quoted above, that plaintiffs had the right to pursue individual FLSA actions in this District.  DuPont further acknowledged that it would have no estoppel argument against the Rule 23 certification that plaintiffs seek in this case.  Meanwhile, plaintiffs proposed—as an alternative to outright denial of the pending motions—that the Court wait to see what happens with certification in the Texas Case and Tennessee Case.  While the parties wait for the decision on certification and the other two cases, plaintiffs proposed that they could proceed with discovery that would be peculiar to New York and that would not duplicate ongoing discovery in the other two cases.

III.    DISCUSSION

    A.    *Motions to Transfer Generally*

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.  The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citations omitted).  Whether two actions qualify as duplicative depends on factors that the United States Supreme Court first sketched long ago: "When the pendency of such a suit is set up to defeat another, the case must be the same.  There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same."  *The Haytian Republic*, 154 U.S. 118, 124 (1894) (internal quotation marks and citation omitted).  When two actions do qualify as

duplicative, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second.  In deciding between competing jurisdictions, it has often been stated that the balancing of convenience should be left to the sound discretion of the district courts." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (citations omitted).  "The two exceptions to the first-filed rule are premised on the notion that [a federal judgment] is not a prize to the winner of a race to the courthouses.  However, this admonition merely reminds us that the first-filed rule does not constitute an invariable mandate.  The inquiry still requires selection of the more appropriate forum, since the first-filed rule is only a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal quotation marks and citations omitted).  "A court must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same." *Curtis*, 226 F.3d at 136.

   B.   *Awaiting the Outcome of Class Certification in Texas*

   The Court appreciates the thorough information that both sides have presented concerning the first-filed rule and the proceedings in both the Texas Case and the Tennessee Case. While assessing that information, the Court returned to the DuPont footnote and to the points from oral argument cited above.  The only reason that DuPont wants this case transferred is the possibility of collective or class litigation.  Collective or class litigation could manifest itself here in

three ways: 1) the possibility, not yet expressed but apparently not foreclosed, that plaintiffs could seek a collective FLSA action in this case after all; 2) the possibility that plaintiffs will opt into the Texas Case or Tennessee Case; and 3) the possibility, expressly stated in the complaint, that plaintiffs will seek a Rule 23 class action for their state-law claim.  As the Court just noted, the first possibility has not yet been expressed, and DuPont has acknowledged that plaintiffs have the right to pursue individual claims in this District.  The second possibility presupposes that certification will occur in the Texas Case or Tennessee Case, but that outcome is not at all certain right now, and DuPont is actively opposing that outcome.  If the second possibility fails then a transfer would create the anomaly of a New York class claim being adjudicated in a different state, where collective litigation had been rejected but without preclusive effect through estoppel.  Such an anomaly would not advance the purposes of the first-filed rule.

The Court is particularly worried about anomalous results here because they have occurred before, or at least have threatened to occur.  In *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235 (E.D.N.Y. 2012), the court applied the first-filed rule and transferred an FLSA collective action to the Central District of California based on "vast similarities among the individual plaintiffs" with respect to their identities and their claims.  *Id.* at 244.  The court granted the transfer even while acknowledging that a motion was pending in the California court "for Rule 23 preliminary approval of settlement and FLSA approval of settlement."  *Id.* at 240. The California court ultimately did grant the settlement-related motion (C.D. Cal. Case No. 8:11-CV-681, Dkt. No. 54), but if it had not and if certification had been denied then the impact on the New York case would have been uncertain.  That kind of uncertainty became very real in *Tate-Small*

11

*v. Saks Inc.*, No. 12 CV 1008 HB, 2012 WL 1957709 (S.D.N.Y. May 31, 2012).  In *Tate-Small*, the plaintiffs sought a national collective action under the FLSA and a statewide collective action under the New York Labor Law.  A suit against the same defendants had been filed about a year earlier in the Northern District of California, also seeking a national collective action under the FLSA and a class-action under state statutes.  *Till v. Saks Inc.*, No. 4:11-CV-504 (N.D. Cal.).  The parties in the *Till* case filed cross-motions to grant or to deny class certification.  The *Tate-Small* court transferred its case to California even though "it remains unclear to me whether the California court will decide the motion [for class certification] or not." *Tate-Small*, 2012 WL 1957709, at *1.  About 16 months later, the *Till* court in fact denied class certification.  (N.D. Cal. Case No. 4:11-CV-504, Dkt. No. 92.)  Both cases settled a few months later; the Court cannot rule out that the transfer and subsequent denial caused the attorneys involved to make different decisions about discovery, settlement, and proceeding with individual FLSA actions.

The Court does not intend to conduct an exhaustive search of dockets nationwide for instances of premature transfers.  The two examples above suffice to show that premature transfers do happen.  The Court wants to avoid a premature transfer here.  *Cf. AIDS Serv. Ctr. of Lower Manhattan, Inc. v. PharmBlue LLC*, No. 14-CV-2792 SAS, 2014 WL 3778200, at *7 (S.D.N.Y. July 30, 2014) (denying a motion to transfer as premature, where the potential transferee court was considering a motion to remand to state court); *Wallace Computer Servs., Inc. v. Moore Corp.*, No. 95 CIV. 6379 (CSH), 1995 WL 542471, at *1 (S.D.N.Y. Sept. 13, 1995) (deferring ruling on transfer until the potential transferee court adjudicated a motion to dismiss).  Right now, as DuPont has acknowledged, this case contains individual FLSA claims that plaintiffs are perfectly entitled to

12

bring in this District.  This case also features a claim under New York law that might develop its own nuances.  *Cf. In re Uber Techs., Inc., Wage & Hour Employment Practices*, 158 F. Supp. 3d 1372, 1373 (U.S. Jud. Pan. Mult. Lit. 2016) (denying centralization of seven actions where "[t]he record before the Panel indicates that, consequently, the determination of whether a plaintiff is an employee or independent contractor will rest on state-specific legal and factual inquiries that are not suitable for centralized pretrial proceedings").  Putting aside for a moment the debate about exactly how similar New York's wage laws are to the FLSA, the potential class for the New York claim, being DuPont employees statewide, might overlap with any national class of DuPont employees created in Texas.  To have overlap, though, the Eastern District of Texas must create a national class; then Judge Skretny would have to create a class for the state claim here; and then the members of the state class would have to choose to opt into the national class in Texas.  All of that might happen, but there is no need right now to engage in so much speculation.  *Cf. Burns v. Gerber Prod. Co.*, No. CV-12-5027-EFS, 2012 WL 8251405, at \*4 (E.D. Wash. Sept. 4, 2012) (holding a motion to transfer in abeyance because "[i]f the Court were to transfer this case now, and the MDL Panel subsequently grants Plaintiff's motion for consolidation, the District of New Jersey would have to transfer the case back to this Court"); *Joyner v. Solvay Pharm., Inc.*, No. 3:10CV36-HEH, 2010 WL 2163876, at \*3 (E.D. Va. May 27, 2010) (denying transfer as "inappropriate at this time" because "there is no need to speculate as to what added convenience the Georgia venue would provide if this claim becomes a collective action"); *Info. Authentication & Prot. of Tex. v. Symantec Corp.*, No. 2:08-CV-484, 2009 WL 6553074, at \*2 (E.D. Tex. June 9, 2009) (denying a motion to transfer as premature, where the potential transferee court already was

considering whether to transfer to the transferor court); *Schnadig Corp. v. Collezione Europa U.S.A.*, No. 01 C 1697, 2001 WL 766898, at *1 (N.D. Ill. July 5, 2001) ("Without the North Carolina court's ruling on the pending motion to dismiss or transfer, this Court is unable to determine if the first-to-file rule should be followed or if Schnadig has presented a compelling circumstance to allow this action to proceed.  Accordingly, Collezione's Motion to Dismiss or Transfer is denied as premature.").  As the parties reported at oral argument, the Eastern District of Texas will hold a hearing on class certification next week and probably will decide on class certification within a month or two thereafter.  Knowing first what will happen with class certification will bring a lot of clarity to plaintiffs' situation here; without committing to any future positions, denial of certification possibly would strengthen plaintiffs' argument to keep this case here, while a grant of certification possibly would strengthen DuPont's argument to transfer the case quickly and to let the Eastern District of Texas arrange for whatever limited discovery would have to be done for this case in New York.  DuPont has not shown such an urgent need to transfer that the issue cannot wait a couple of months for guidance from the Eastern District of Texas.

Accordingly, the Court has decided that denial without prejudice is the best approach for now.  While the issue of class certification runs its course in the Eastern District of Texas, the Court endorses plaintiffs' proposal from oral argument and directs the parties to proceed with New York-related discovery that will have to occur regardless of transfer.  The Court will hold a status conference on January 24, 2018 at 10:30 AM to obtain an update from the parties on discovery and on the class certification proceedings in the Eastern District of Texas.

IV.     CONCLUSION

For all of the foregoing reasons, the Court denies DuPont's motions to transfer and to stay

proceedings (Dkt. Nos. 11, 12), but without prejudice.  As mentioned above, a status conference is

scheduled for January 24, 2018 at 10:30 AM.

SO ORDERED.

___/s Hugh B. Scott_____

Honorable Hugh B. Scott
United States Magistrate Judge

DATED: October 3, 2017